The People *v.* Travis.

---

SUPERIOR COURT OF BUFFALO. December Criminal Term, 1854. *George W. Clinton*, Justice, presiding.

### THE PEOPLE *v.* JACOB TRAVIS.

Perjury cannot be assigned of a false oath to a protest taken before a notary public, as part of the preliminary proofs in case of a marine loss. The oath in such a case is a voluntary and extra-judicial proceeding.

MOTION for leave to enter a *nolle prosequi*, with a view to bring up the question of the sufficiency of the indictment.

The indictment alleged that on the 16th day of November, 1853, the schooner Hope, of which the defendant was master, was wrecked and lost on Lake Erie; that one Samuel Watson, was owner of the schooner, and had before the time of the loss procured a policy of insurance to the amount of $600, to be executed for his benefit by the Atlas Mutual Insurance Company; that the defendant, on the 21st day of November, at Buffalo, before Samuel T. Atwater, a notary public, swore, as master, to the truth of a protest setting forth a history of the circumstances leading to and accompanying the loss, which protest is set forth in, and parts of it are negatived by, the

indictment, which concludes with the general allegation that the defendant did, in manner aforesaid, &c., commit willful and corrupt perjury.

*A. Sawin* (District Attorney), for the People.

—— ——, for the defendant.

*By the Court,* CLINTON, J.   An indictment for perjury must set forth "the substance of the offence," and that the matter sworn to and alleged to have been false, was material, must be shown by the pleading.   There can be no materiality in the matter sworn to, unless it was pertinent to some trial or proceeding warranted by law, and the indictment must set forth such trial or proceeding.   "A party claiming goods seized under an execution, made an affidavit stating that he had pur chased and paid for them, and was indicted for perjury, but as the indictment did not state that any application had been made for an interpleader rule, it was holden bad, for it did not appear that any proceeding was pending to which the affidavit was applicable.   So in other cases where the false oath is made in the course of a suit, the indictment must show that a suit was then depending; if it be preliminary to a suit, and in a matter of which the court has jurisdiction, the indictment must show it." (3 *Archbold Cr. L.,* 593, 594.)

Admitting that the notary had jurisdiction to administer the oath, and that the defendant is indictable, and indictable in a State court for perjury, in swearing to the protest, still the indictment is clearly bad, because it does not show any pending proceeding to which the protest was applicable, nor that the protest was preliminary to any suit or proceeding.   It does not even show that there was any outstanding policy of insurance covering the loss.   It avers that Watson, the owner, had "before that time" procured an insurance on the vessel, but it does not allege that the insurance was outstanding, nor that Watson had commenced or contemplated an action upon the policy, nor that the protest was made as parcel of the preliminary

The People *v.* Travis.

proofs required by the terms of the policy, or by the custom of merchants, nor that it was intended or could be used for any purpose whatever.

I might here dismiss this matter, but at the request of the parties I will give my opinion upon other and more important questions involved in this prosecution.

Assuming that perjury may be predicated of a "protest," the district attorney claims that the case falls within our statute of perjury. I do not think so. The general words of that statute must be restrained by general principles of law. The words include all perjuries committed in any territory, and before any tribunal or officer, provided the oath is lawfully required. The cases are very few in which a government punishes crimes committed out of its territorial jurisdiction; and a State never recognizes as a crime a breach of the laws of another State or jurisdiction. We, perforce, leave to the federal courts the vindication of the laws of the United States within our borders, and do not usurp the power to punish perjuries or robberies committed in Ohio. Crime is essentially local, and is defined and punished only by the law of the place where it was committed.

The notary public before whom the oath in question was taken, was one duly appointed in pursuance of the laws of this State, and acting within its territory. Our statute confers no authority upon a notary to administer an oath. It confers some powers and enumerates others derived from other sources. It declares that "notaries public" appointed under our law, "have authority to demand acceptance and payment of foreign bills of exchange," &c., "and to exercise such other powers and duties as by the law of nations, and according to commercial usage, or by the laws of any other State, government or country, may be performed by notaries public." (2 *R. S.*, 283, §§ 44, 45.) Now, all this is simply declaratory and permissive. A notary public is an officer recognized by the law of nations. That law vests him with certain powers, and his seal is taken notice of by foreign courts. Our statute declares our notary public to be a notary public within the purview of

the law of nations. Other States, governments and countries may, by law, vest certain powers in notaries public, in consideration of their public character, and the power of authentication attributed to their seals. A sister State may, for instance, confide to them the power of taking, within their theatres of action, proofs of conveyances to be recorded, and of instruments and depositions to be used in evidence within its territory. Our law says that our notary may exercise these powers; but they are powers conferred by and exercised under foreign laws.

The same remarks apply to the powers and duties which, "according to commercial usage," may be performed by notaries public. Our law permits our notaries to perform them. By commercial usage, this protest could be made before a notary public, and by the same usage, he could administer the oath and authenticate the protest; but our law did not require the oath, nor was it, under our law, "necessary for the prosecution or defence of any private right, or for the ends of public justice. (2 *R. S.*, 681, § 1, *sub.* 2.) This subdivision of the statute definition of perjury, refers to a class or classes of cases widely different from this. But, if it be comprehensive enough to cover this case, then where is the evidence in the indictment of the existence of any private right or claim to the prosecution or defence of which the sworn protest could be applicable?

But such a protest is a purely voluntary act. The master may properly make it for the information of his owners, or the satisfaction of the underwriters, in case of a loss by perils of the sea. He cannot, however, be required to make it, nor can the owner, "by commercial usage," be required to procure it. If made, it forms a very proper portion of the preliminary proofs of loss. As a voluntary statement, whether sworn to or not, it may be important evidence against the master for the owner, or for the underwriter in the owner's action on the policy, but it is never, under our law, evidence for the owner against the insurer.

I am of the opinion that the crime of perjury cannot, under our statute, be founded upon such a protest, and the district attorney is advised to enter a *nolle prosequi.*

Motion granted.

---

SUPERIOR COURT OF BUFFALO. December General Term, 1854. *Clinton, Verplank* and *Houghton*, Justices.